UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN TIRE OF SACRAMENTO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY, et al.,<br><br>Defendants. | No. 2:13-cv-2135 KJM AC<br><br><br>ORDER |

On March 14, 2014, the court heard argument on defendants' motion to transfer or, in the alternative, to dismiss. Lawrence Skidmore and Kathleen Lyon appeared for plaintiff; Eric Enson appeared for defendants. Following the hearing, the court ordered supplemental briefing, which has now been filed. After considering the parties' papers and arguments, the court GRANTS defendants' motion to transfer.

I. BACKGROUND

On October 15, 2013, plaintiff Morgan Tire of Sacramento (Morgan Tire) filed a complaint alleging conversion, breach of county contracts and piggy-back contracts, intentional interference with prospective business advantage, breach of the covenant of good faith and fair dealing, and unfair business competition against Goodyear Tire and Rubber Company (Goodyear) and Wingfoot Commercial Tire Systems (Wingfoot) (collectively defendants). ECF No. 1.
/////

1   Defendants filed a motion to change venue or dismiss on December 10, 2013.
2   ECF No. 13. On December 31, 2013, plaintiff filed its first amended complaint (FAC). ECF No.
3   16. The court then denied the motion to dismiss as moot. ECF No. 17.
4   On January 21, 2014, defendants filed a new motion to transfer or to dismiss. ECF
5   No. 20. Plaintiff opposed the motion, defendants filed a reply and plaintiffs filed an objection to
6   new evidence defendants filed with the reply. ECF Nos. 23–25.
7   On February 25, 2014, the court asked the parties for supplemental briefing and
8   rescheduled the hearing on the motion. ECF No. 26. The parties filed their supplemental briefs.
9   ECF Nos. 27–28. Following the March 14, 2014, hearing, the court asked for additional
10  supplemental briefing. ECF No. 31. As noted, the parties have now submitted their supplemental
11  briefs in response to the court's order. ECF Nos. 34–35.
12  II. <u>ALLEGATIONS OF THE FIRST AMENDED COMPLAINT</u>
13  Morgan Tire is a distributor of new tires and for twenty years, until December
14  2011, operated under a distributorship subject to a New Tire Agreement with Goodyear. FAC,
15  ECF No. 16 ¶ 9 & Ex. A. In January 2012, Goodyear sent another agreement to Morgan Tire, but
16  the latter did not sign it. ECF No. 16 ¶ 11. However, Morgan Tire and Goodyear agreed to
17  continue to do business "under a partly written and partly oral agreement under those terms of the
18  New Tire Agreement acknowledged by the well-established course of business dealings by and
19  between [them] . . .," including supplying Goodyear tires to national accounts, ordering tires,
20  prices and payment and credit terms for tires. *Id*. The parties have not previously been in any
21  legal disputes. *Id*.
22  In 2001, Morgan Tire opened a Goodyear retread tire plant under a distributorship
23  agreement for retread sales, the Retread Agreement. *Id*. ¶ 12. The parties have not executed a
24  written Retread Agreement since 2003, but have continued to do business under a partly written,
25  partly oral agreement reflecting their course of business dealings and reflecting the terms of the
26  Retread Agreement regarding supplying retreads to national accounts and ordering, pricing and
27  payment. *Id*. ¶ 13.
28  /////

The New Tire and Retread Agreements, collectively the Distributorship Agreements, gave Morgan the exclusive right to service Goodyear's national accounts, such as UPS and Federal Express; Goodyear tires were preapproved for these accounts. *Id.* ¶ 15.

Since 1993, Morgan Tire has had written agreements to supply new Goodyear tires to the County of Sacramento. Since 2009, it has had an agreement to supply the County with Goodyear retreads. *Id.* ¶ 17. In 2012 Morgan Tire again secured a contract with Sacramento County to supply both new and retread tires, using the pricing figures Goodyear employees input directly into Morgan Tire's bid package. *Id.* ¶¶ 18, 20. In order to fulfill its obligations to the County, Morgan Tire entered into a written subcontract with Goodyear for the latter to supply Morgan Tires with the requirements of the County contract. *Id.* ¶ 19. The City of Roseville and City of Sacramento piggy-backed onto Sacramento County's agreement with Morgan Tire. *Id.* ¶ 22.

As part of its agreement to supply Morgan Tire with the retread material necessary to satisfy the County contract, Goodyear required Morgan Tire to use its "cushion and precure" process and to purchase and install new equipment at Morgan Tire's retread plant. *Id.* ¶ 21 & Ex. D.

When Morgan Tire began talking about a retread agreement with Continental Tire some of Goodyear's employees said Goodyear would not be pleased and would cancel Morgan Tire's contract. *Id.* ¶ 24. On January 17, 2013, Morgan Tire received a letter from Goodyear terminating the Distributorship Agreements. Even before the termination went into effect, Goodyear cut off Morgan Tire's access to Goodyear's online ordering and accounting system and to the credit balances Morgan Tire had amassed. *Id.* ¶ 29. As a result, Morgan Tire did not have enough tire material on hand to honor its contracts with Sacramento County and the City of Roseville. *Id.* ¶ 31. Goodyear later told Sacramento County and the piggy-back contract parties its subsidiary Wingfoot could fulfill the contract at the same price as Morgan Tire. *Id.* ¶ 32.

The First Amended Complaint makes five claims: (1) conversion against Goodyear; (2) breach of the Sacramento County and piggy-back contracts, against Goodyear; (3) intentional interference with prospective business advantage against Goodyear and Wingfoot: (4)

breach of

the covenant of good faith and fair dealing against Goodyear; (5) unfair competition against Goodyear and Wingfoot.

### III. MOTION TO TRANSFER

#### A. Standard

Under 28 U.S.C. § 1404(a) a district court may "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented . . . . for the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Typically, in considering such a transfer, the court "must evaluate both the convenience of the parties and various public-interest considerations," "weigh[ing] the relevant factors and decid[ing] whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interests of justice.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court*, __ U.S. __, 134 S. Ct. 568, 581 (2013) (quoting 28 U.S.C. § 1404(a)).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* (citation and internal quotation marks omitted). Under such circumstances, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 579 (citation and internal quotation marks omitted). By "[e]nforc[ing] . . . valid forum-selection clauses, bargained for by the parties, [the court] protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 581 (citation and internal quotation marks omitted).

Accordingly, where presented with such an agreement, the court must disregard plaintiff's choice of forum and the parties' private interests. *Id.* at 581–82. It instead "consider[s] arguments about public-interest factors only," and "those factors will rarely defeat a transfer motion." *Id.* at 582. Further, "the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation

4

and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 582.

Before the court may consider the impact of any forum selection clause on plaintiff's choice of forum and the motion to transfer, it must first determine whether a contract exists and, if so, whether it contains the forum selection clause at issue. *Kedkad v Microsoft Corp.*, No. 13-0141, 2013 WL 4734022, at *3 (N.D. Cal. Sept. 3, 2013) ("Before the court can apply federal law to the interpretation and enforcement of a forum selection clause, however, it must, as a threshold issue, determine whether a forum selection clause exists."); *see also Comerica Bank v. Whitehall Specialties, Inc.,* 352 F. Supp. 2d 1077, 1081 (C.D. Cal. 2004). Defendants here bear the burden of demonstrating the existence of a contract and the inclusion of the forum selection clause in that contract. *See Kedkad*, 2013 WL 4734022, at *3 n.3; *Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, No. 09-2140, 2010 WL 883831, at *13 (C.D. Cal. Mar. 5, 2010).

When ruling on motions to transfer based on § 1404(a), the court may consider undisputed facts outside of the pleadings. *See Martensen v. Koch*, No. 12-05257, 2013 WL 4734000, at *8 (N.D. Cal. Sept. 3, 2013). *See also Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983) ("Although the party seeking transfer bears the burden of persuasion that transfer is proper, the burden under § 1404(a) is substantially less than a transfer under the doctrine of *forum non conveniens*.") (citing *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)).

B. Analysis

Defendants argue Goodyear's contracts with Morgan Tire contain a forum selection clause that requires Morgan Tire to bring suit in state or federal court in Summit County, Ohio. Mot. to Transfer, ECF No. 20-1 at 11; *see* FAC, Ex. A, ECF No. 16 at 32 ¶ 30 ("Dealer agrees that Dealer shall commence, and that Goodyear may commence, any action arising out of or relating to this Agreement in state or federal court in Summit County, Ohio.") (New Tire Agreement). They also claim Morgan Tire is bound by admissions in the original complaint that even when the various agreements had lapsed, "Morgan Tire and Goodyear

5

1 continued their business relationship under the terms of the New Tire Agreement." They contend
2 that even under Morgan Tire's theory about a hybrid oral/written contract, the forum selection
3 clause controls. Compl., ECF No. 1 ¶ 9; ECF No. 20-1 at 13.

Morgan Tire contends it was not bound by this clause because it was not a bargained-for, agreed upon term and did not carry over from past agreements; it may plead inconsistently in successive pleadings; the forum selection clause does not govern because it covers only those claims arising out of the New Tire Agreement, but not those arising out of the Retread Agreement, and cannot be relied on by Wingfoot, who did not sign any of the Agreements. Opp'n, ECF No. 23 at 12–20.

In reply, defendants argue a forum selection clause survives the termination of a contract; additionally, the order acknowledgement faxed after Morgan Tire submitted a purchase order following the lapse of the contract clearly stated that any disputes arising out of the orders would be subject to the forum selection clause. Reply, ECF No. 24 at 6-8 & No. 24-1 at 6 ("Customer agrees that Customer shall commence, and Seller may commence, any action arising out of or relating to this Acknowledgement, the goods supplied hereunder or the order relating thereto in a state or federal court in Summit County, Ohio.").[1] Defendants claim this order acknowledgement form was faxed or emailed to Morgan Tire ninety-four times in 2012. Defs.' Supplemental Br. (June 24, 2014), ECF No. 35-1 ¶ 4.

Morgan Tire disputes that order acknowledgement forms containing the forum selection clause were faxed with every purchase order it placed and submits a copy of an order confirmation it received from Goodyear without a forum selection clause. Pl.'s Supplemental Brief (June 25, 2014), ECF No. 34-1, Ex. 1.

1. Judicial Admission

Defendants contend plaintiff's First Amended Complaint is an attempt to plead around admissions in the original complaint that the New Tire Agreement governed the parties'

/////

---

[1] The document is far from clear, as the print is very small and difficult to read, but the court reproduces it as well as it is able.

6

1   business relationship over the past two decades. ECF No. 20-1 at 13. They argue the court may
2   strike or ignore the changed allegations because plaintiff did not explain them. *Id*. at 14.
3         Plaintiff argues its characterization of the New Tire Agreement in the First
4   Amended Complaint is neither false nor misleading, but merely a clarification of the status of the
5   New Tire Agreement with its forum selection clause. ECF No. 23 at 9–10. Plaintiff says it did
6   not use the word "governed" in the complaint, which in fact made clear that the New Tire
7   Agreement was not in effect at the time of the events described in the complaint and the First
8   Amended Complaint. *Id*. at 10.
9         "[A] statement in a complaint may serve as a judicial admission," but when the
10  party who made the statement "explains the error in a subsequent pleading or by amendment, the
11  trial court must accord the explanation due weight." *Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 859–
12  60 (9th Cir. 1995); *see also Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc*., 713
13  F.2d 618, 621 (11th Cir. 1983) (party bound by admission in its pleadings that cause of action
14  arose in Georgia).
15        Defendants rely on *Bauer v. Tacey Goss, P.S.*, No. 12-00876, 2012 WL 2838834
16  (N.D. Cal. July 10, 2012). In *Bauer*, the plaintiffs claimed defendants could not enforce a forum
17  selection clause because they had not been a party to the agreement containing the clause. *Id*. at
18  *3. In the original complaint, however, they had alleged defendants had provided the services
19  under the agreement, but omitted this claim in the amended complaint filed after a motion to
20  transfer relied on the clause, explaining they had improperly relied on various documents in
21  drafting the original complaint. *Id*. The court said plaintiffs were bound by their original
22  admission because they had "not provided any legitimate basis for withdrawing these
23  allegations." *Id*.
24        In the original complaint here, plaintiff said that "[d]uring the last two decades,
25  Morgan Tire has been under a distributorship agreement for new tire sales . . . in the basic form
26  and content as attached hereto as Exhibit 'A.' Often, the New Tire Agreement term would lapse
27  between renewals. However, at all times Morgan Tire and Goodyear continued their business
28  relationship under the terms of the New Tire Agreement." ECF No. 1 ¶ 9. It is true plaintiff does

not use the word "govern," but it does say the business relationship was governed by the terms of the New Tire Agreement. Nevertheless, plaintiff explains in its opposition that the First Amended Complaint clarified that the New Tire Agreement in force at the time of the alleged wrongdoing "was by course of business and specifically not by Exhibit A, which Morgan Tire did not execute." ECF No. 23 at 10.

"[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith . . . inconsistent allegations are simply not a basis for striking the pleading." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). The court declines to hold Morgan Tire to its statements in the complaint, given its explanation in its opposition, the recognition that an amended complaint can contain contradictory claims, and a record that does not support a finding of bad faith.

2. Is there a contract containing a forum selection clause?

The parties agree that California law governs the questions of contract formation and that defendants bear the burden of demonstrating the existence of a contract and the inclusion of the forum selection clause in that contract. Pl.'s Supplemental Br. (March 14, 2014), ECF No. 27 at 5–6, 9; Defs.' Supplemental Br. (March 14, 2014), ECF No. 28 at 2–4; *see also Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007) (a court sitting in diversity applies state's choice-of-law principles; in California, absent a choice of law by the parties, contract is interpreted by law of place of performance and creation); *Aspect Grp. v. Movietickets.com, Inc.*, No. 05-3125, 2006 WL 5894608, at *6 (C.D. Cal. Jan. 24, 2006); *Alcatel*, 2010 WL 883831, at *13 ("[A] party seeking to enforce a forum selection clause has the initial burden of establishing the existence and applicability of the forum selection clause.").

Despite defendants' argument that California law applies, they rely on some out-of-state cases to support their position. For example, they argue a forum selection clause survives the termination of a contract, ECF No. 24 at 7, but cite to cases from the Eastern District of Pennsylvania and the Northern District of Illinois. Moreover, those cases address the situation where a party is suing for a claim that arose when a contract containing a forum selection clause

was in force, but had expired or been terminated by the time suit was brought. *See, e.g., Advent Elecs. Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843 (N.D. Ill. 1989). These cases do not assist defendants.

Defendants do cite to *New Image Painting, Inc. v. Home Depot U.S.A., Inc.*, a Central District case, in support of their claim that a forum selection clause is not rendered invalid when a later agreement does not specifically revoke it. No. 09-1224, 2009 WL 4730891 (C.D. Cal. Dec. 7, 2009). In that case, plaintiff alleged the forum selection clause in a contract was superseded by a later oral agreement. *Id*. at *4. The court rejected the claim, finding that for the oral agreement to supersede the written agreement, there must be a novation, yet plaintiff did not present sufficient evidence a novation had occurred. *Id*.[2] In this case, in contrast, plaintiff alleges there was no existing contract with a forum selection clause. *New Image Painting* does not control.

The parties do agree that the Uniform Commercial Code (UCC) applies to the question of contract formation and contract terms. Although there is a split of authority whether distributorship agreements are governed by the UCC, *see Boyd v. Oscar Fisher Co.*, 210 Cal. App. 3d. 368, 378–79 (1989), California courts have applied its provisions to such agreements. *See, e.g., Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal. App. 4th 880 (1995) (applying gap filling provisions of the UCC and custom and usage to a form distributorship contract).

Under the UCC, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Cal. Com. Code § 2204; *see also* Cal. Com. Code § 2206(1)(a) ("An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."). Plaintiff argues that when the parties act as though they have a contract, section 2207(3) applies to fill in the terms. ECF No. 27 at 6. Under that section,

---

[2] "A novation is the substitution of a new obligation for an existing one," and is "a contractual doctrine." *Howard v. Cnty. of Amador*, 220 Cal. App. 3d 962, 977 (1990) (citing Cal. Civ. Code § 1530).

9

"[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code." *See Apex LLC v. Sharing World, Inc*., 206 Cal. App. 4th 999, 1011 (2012) (using gap filling provisions of the UCC to supply terms for time and place for payment and delivery when these were not included in the contract).

Also under the UCC, a "course of dealing between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." Cal. Com. Code § 1303(d). "A 'course of dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Cal. Com. Code § 1303(b). *See also Expeditors Int'l of Wash., Inc. v. Official Creditors Comm. of CFLC, Inc.* (*In re CFLC, Inc*.), 166 F.3d 1012, 1017 (9th Cir. 1999). It "'usually refers to previous dealings between parties which indicate the parties previously agreed on a specific issue that is now in dispute.'" *Id*. at 1017 (quoting the underlying bankruptcy decision, *Expeditors Int'l of Wash., Inc. v. Official Creditors Comm. of CFLC, Inc.*, 209 B.R. 508 (B.A.P. 9th Cir. 1997)). Although courts are split over the question whether supplementary terms under § 2207(3) encompass terms implied by a course of dealing, *Nuaire, Inc. v. Merrill Mfg. Corp*., No. 11-1249, 2012 WL 3229380, at *5 (D. Minn. Aug. 6, 2012), California courts appear to recognize that a course of dealing may be a source of contract terms. *C9 Ventures v. SVC-West, L.P*, 202 Cal. App. 4th 1483, 1498-99 (2012) (in dicta). "An inference of the parties' common knowledge or understanding that is based upon a prior course of dealing is a question of fact." *In re CFLC*, 166 F.3d at 1017.

Plaintiff argues the parties' course of dealing supplies terms relating to their actual business, but the course of dealing does not cover the forum selection clause. ECF No. 27 at 6; ECF No. 23 at 14.

10

Defendants contend that the order acknowledgement forms provide further evidence that the parties' relationship is governed by a valid and enforceable forum selection clause. ECF No. 35 at 2. According to this argument, the forms are part of the parties' decades-long course of dealing, supplying the terms of the parties' contractual relationship.

Plaintiff does not appear to deny it received the order acknowledgement forms defendants claim Goodyear faxed: plaintiff admits it requested Goodyear stop faxing the forms and says that the forms were "thrown away." ECF No. 34-1 ¶ 6. Plaintiff challenges the forms on the grounds that they are "partial page, illegible, and seemingly altered," and were attached to a declaration made by "someone that had no direct knowledge of the same." ECF No. 34 at 4. Plaintiff also objects to the court's consideration of the forms because no proof of transmission was attached. ECF No. 27 at 7.

A confirmation that a fax reached its destination, such as a confirmation page or destination phone number on a copy of the document, creates a rebuttable presumption that the fax was received. *See Renegade Oil, Inc. v. Progressive Cas. Ins. Co.*, 101 P.3d 383, 386 (Utah Ct. App. 2004); *Stevens v. Shipping & Terminal Co. v. JAPAN RAINBOW II MV*, 334 F.3d 439, 444 (5th Cir. 2003) (affirming district court's determination that fax confirmation of successful transmission raises presumption of receipt). The absence of such confirmation information negates the rebuttable presumption in favor of receipt, but does not create a rebuttable presumption against receipt. *Renegade Oil*, 101 P.3d at 386 (determining "without confirmation information that the [f]ax reached its destination, the trial court had to weigh the conflicting testimonial evidence").

Here, defendants have not provided confirmation pages or destination phone numbers for the order acknowledgement forms, and therefore have not created a rebuttable presumption that plaintiff received the fax. As a result, whether the order acknowledgment forms were received by plaintiff is an issue of fact, which this court must resolve in favor of plaintiff for the purposes of establishing the existence of a forum selection clause. *See Alcatel*, 2010 WL 883831, at *13.

/////

Defendants also argue that after the New Tire Agreement expired, the parties continued to perform as before; their conduct implies they mutually assented to a new contract containing the same provisions as the New Tire Agreement, including that agreement's forum selection clause. Defendants rely on *Bowlin's Inc. v. Ramsey Oil Co.*, a UCC case from the New Mexico Court of Appeals, to support their argument that all the terms of the expired contract continued in force.[3] In *Bowlin's*, the plaintiff had had a contract with Texaco for the delivery of gasoline, which included a provision that it notify Texaco of any irregularities in the delivery within two days. 662 P.2d 661, 672 (N.M. Ct. App. 1983). Although the contract with Texaco expired, Ramsey Oil entered into an oral contract for the deliveries, changing only the manner of payment. *Id*. The court found the provision for inspection and notification of any problems became part of the oral contract based on the "course of dealing for more than three years under a contract identical in all respects other than to whom payment would be made. . . ." *Id*.

Plaintiff distinguishes *Bowlin's* on the ground that the terms imported through the course of dealing were those relating to the day-to-day running of the business. Although plaintiff does not support its argument with citation to any case law, some cases have suggested a course of dealing incorporates those provisions the parties have addressed over the course of the contracts. *New Moon Shipping Co., Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir. 1997) ("Evidence of a prior course of dealing may establish a party's awareness of and consent to intended contractual terms. . . . Typically, a course of dealings analysis focuses on the actions of the parties with respect to a specific issue that the parties may have encountered before. On this basis, a factfinder could reasonably infer that the parties have impliedly incorporated this understanding into their subsequent contracts."). Plaintiff alleges the parties have not been in litigation before, suggesting they had never encountered the forum selection clause.

Nevertheless, there are cases finding a forum selection clause incorporated into a contract through a course of dealing even in the absence of any evidence of litigation history

---

[3] Defendants also rely on *National Union Fire Ins. Co. v. Showa Shipping Co.*, No. 97-16374, 16375, 1999 U.S. App. LEXIS 516, at *9 n.6 (9th Cir. Jan. 13, 1999). Under Ninth Circuit Rule 36–3(c), this decision may not be cited as precedent and therefore will not be considered by this court.

12

1  between the contracting parties. *See Bell, Inc. v. IFS Industries, Inc.*, 742 F. Supp. 2d 1049, 1053
2  (D.S.D. 2010) (finding forum selection clause to be part of contract when it had been part of
3  every invoice for eight years); *but see Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*,
4  No. 09-153, 2010 WL 582205, at *5 (N.D. Okla. Feb. 10, 2010) (single contract with forum
5  selection clause between parties did not establish course of dealing).  In this case, the parties
6  conducted business under the New Tire Agreement for nearly twenty years, and after that
7  agreement expired, continued to conduct business according to its terms.  During that time, the
8  forum selection clause contained in that agreement drew no objection from plaintiff.  This clause
9  is part of the parties' contract.

          3. <u>Does the forum selection clause cover all of the claims?</u>

          In *Manetti-Farrow, Inc. v. Gucci America, Inc*., the Ninth Circuit said that "because enforcement of a forum selection clause necessarily entails interpretation of the clause before it can be enforced, federal law . . . applies to the interpretation of forum selection clauses." 858 F.2d 509, 513 (9th Cir. 1988).

          The clause in this case provides that "Dealer agrees that Dealer shall commence, and that Goodyear may commence, any action arising out of or relating to this Agreement in state or federal court in Summit County, Ohio." ECF No. 16 at 32 ¶ 30.

          The Ninth Circuit and courts in this circuit have recognized that the scope of a forum or venue selection clause is not necessarily limited to contract claims. *Manetti-Farrow, Inc.*, 858 F.2d at 514 (claims of tortious interference with prospective economic relations covered by forum selection clause ); *Perry v. AT&T Mobility LLC*, No. C-01488 SI, 2011 WL 4080625, at *3-4 (N.D. Cal. Sept. 12, 2011) (forum selection clause can cover tort or statutory claims and interpreting forum selection provision broadly when it governed suits "relating to" the contract).

          In *Manetti-Farrow,* the plaintiff had entered into an exclusive dealership contract with Gucci.  The contract contained a forum selection clause establishing Florence, Italy as the forum for any litigation "regarding interpretation or fulfillment" of the contract. 858 F.2d at 510. When Gucci terminated the dealership, plaintiff filed suit in the Northern District of California against Gucci and several members of the Gucci family, alleging conspiracy to interfere with

13

contractual relations, conspiracy to interfere with prospective economic advantage, tortious interference with contract, tortious interference with prospective economic advantage, breach of the covenant of good faith and fair dealing, and unfair trade practices. *Id*. at 511. The court said that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract," and found that because Manetti-Farrow's claims involved "the central conflict over the interpretation of the contract," they were governed by the forum selection clause. *Id*. at 514 (internal citation & quotation marks omitted). If the claims "arise out of the contractual relation and implicate the contract's terms," they are covered by the forum selection clause in the contract. *Crescent Int'l, Inc. v. Avatar Cmtys., Inc*., 857 F.2d 943, 944 (3d Cir. 1988).

All of plaintiff's claims arise out of the contractual relation in this case. For example, plaintiff alleges that Goodyear breached the covenant of good faith and fair dealing by refusing to wind up outstanding amounts due to plaintiff, allegations which also underlie the conversion claim; plaintiff's claim to amounts due flows from the underlying Distributorship Agreements. In addition, the prices for tires Goodyear supplied for plaintiff to use in the County and piggy-back contracts flowed from the parties' Distributorship Agreements.

Finally, Wingfoot may also rely on the forum selection clause even though it was not a party to any contract with plaintiff. A forum selection clause may apply to non-signatories when the alleged conduct of those parties is closely related to the contractual relationship. *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc*., 485 F.3d 450, 456 (9th Cir. 2007) (citing *Manetti-Farrow*, 858 F.2d at 514 n.5); *see also Sawyer v. Bill Me Later, Inc*., No. 10-04461, 2011 WL 7718723, at *4 (C.D. Cal. 2011) (a person may enforce a forum selection clause he did not sign if he was a third party beneficiary of the contract, a successor in interest to the contract, or an agent intended to benefit from the contract). Wingfoot's conduct as described in the complaint is closely related to the contractual relationship at issue in this case.

### 4. Is the clause enforceable?

Once the court finds a valid forum selection clause, it should refuse to enforce it only in "exceptional cases," based on an evaluation of public-interest, not private factors. *Atl.*

*Marine Constr. Co.*, 134 S. Ct. at 581–82.  Relevant factors include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 581 n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). In this case plaintiff points only to the prejudice it will suffer if the case is transferred to Ohio. Accordingly, it has not borne its burden of showing exceptional circumstances justify a refusal to enforce the clause.

IV. CONCLUSION

For the reasons set forth above, the court GRANTS defendants' motion to transfer.

IT IS SO ORDERED.

DATED:  November 12, 2014.

_____
UNITED STATES DISTRICT JUDGE

15